UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BETTIE BEAN                                             CIVIL ACTION

VERSUS

NATIONSTAR MORTGAGE LLC                        NO. 25-00140-BAJ-EWD
D/B/A MR. COOPER

RULING AND ORDER

Before the Court is Defendant Nationstar Mortgage, LLC, d/b/a Mr. Cooper's **Rule 12(c) Motion to Dismiss.** (Doc. 19). Plaintiff Bettie Bean opposes the Motion. (Doc. 21). Defendant filed a Reply Memorandum. (Doc. 22). For the reasons stated herein, Defendant's Motion is **GRANTED.**

I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Defendant's servicing of Plaintiff's mortgage loan (the "Loan"). On February 9, 2024, Plaintiff sold the mortgage property by Cash Sale Deed to Hollins Housing, LLC, which conveyed the property that same day to another individual; Accent Title, LLC, Plaintiff's closing agent, closed both conveyances. (Doc. 1-1 at 20). Plaintiff alleges that, on or about February 5, 2024, Defendant gave Plaintiff a mortgage payoff quote in the amount of $34,026.35, valid through April 1, 2024. (Doc. 1-1 at ¶ 3). This payoff quote allegedly included a March 2024 payment. (*Id.*). Plaintiff disagreed with the quoted amount, apparently because it included the March 2024 payment, and directed her closing agent, Accent Title, LLC, not to pay the quoted amount in full at closing. (*Id.* at ¶¶ 3–4). On February 17, 2024, Plaintiff

received a second payoff quote from Defendant in the amount of $39,160.37, which still included a March 2024 payment. (*Id.* at ¶¶ 5 – 6). Plaintiff alleges this new quote also reflected erroneous "lender paid charges" totaling $6,701.24, a $5,163.24 difference from the original quote, without itemization or explanation. (*Id.*). On or about February 19, 2024, Accent Title tendered, and Defendant cashed, a check for $34,026.35, the amount of the original February 5, 2024 payoff quote. (*Id.* at 13). On or about March 4, 2024, Defendant issued an uncertified check to Accent Title in the same amount, its remittance stub marked "SHORT PAYOFF REFUND," which Accent Title never cashed. (*Id.* at ¶¶ 7–8).

Plaintiff further alleges that, "[a]fter numerous attempts to obtain an itemized invoice of lender paid expenses," she received a payoff demand letter dated June 10, 2024, from Defendant. (*Id.* at ¶ 9). Plaintiff alleges that she never received a fully itemized breakdown of all lender paid expenses, but did receive an invoice from Cyprexx Services, LLC, for tree removal work totaling $5,071.24. (*Id.* at ¶ 10). Plaintiff alleges that these amounts exceed the maximum property preservation cost reimbursements allowable under the United States Department of Housing and Urban Development ("HUD") guidelines. (*Id.*). Defendant thereafter filed a Petition for Executory Process without Appraisal, and a Notice of Constructive Seizure was served on Plaintiff on August 19, 2024, with a sheriff's sale set for November 13, 2024. (*Id.* at ¶ 11). On October 10, 2024, Accent Title received a third payoff quote from Defendant, directed to Plaintiff, in the amount of $47,069.82, which included interest charges of $1,987.48 calculated from December 1, 2023 to October 31, 2024, as well

2

as an additional lender paid expenses report, including property inspection fees of $2,369.10, maintenance fees of $3,147.14, and repair fees of $30.00. (*Id.* at ¶ 12). At Plaintiff's direction, Accent Title reinstated the Loan by wire transfer to Defendant in the amount of $17,918.65 in order to stop the foreclosure sale from taking place on November 13, 2024.[1] (*Id.* at ¶ 13).

On January 13, 2025, Plaintiff filed suit in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, alleging that Defendant violated Housing and Urban Development Guidelines, the Real Estate Settlement Procedures Act, and the Fair Debt Collection Practice Act. (Doc. 1-1). Thereafter, Defendant removed the case to this Court, asserting removal and supplemental jurisdiction under 28 U.S.C. §§ 1331, 1367. (Doc. 1 at 2). Now, Defendant moves to dismiss Plaintiff's claims through judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Doc. 19).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion brought pursuant to Rule 12(c) is designed to "dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76

---

[1] Plaintiff's narrative timeline in her Petition ends here and does not elaborate on any events that may have occurred after this wire transfer regarding the mortgage property or the mortgage itself. The Court presumes the next relevant action in this matter was her filing of the Petition.

(5th Cir. 1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Tr. Co.*, 313 F.3d at 312 (internal citations omitted).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* (internal citations omitted). "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* at 312–13 (internal citations omitted). The Court will not, however, "accept as true conclusory allegations or unwarranted deductions of fact." *Id.* at 313 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (addressing Rule 12(b)(6) standard)) (quoting *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (internal citations omitted).

## III.   DISCUSSION

Defendant moves for a judgment on the pleadings and argues that Plaintiff has

4

not alleged a valid claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), that Plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), fails as a matter of law, and that there is no private right of action for alleged violation of HUD regulations. (Doc. 19 at 1; Doc 19-1 at 5–12). Plaintiff responds that she has satisfied each element for a RESPA claim, that dismissing the FDCPA claim would be premature, and that her references to HUD regulations are illustrative of Defendant acting in bad faith. (Doc. 21 at 3–6). The Court will take each argument in turn.

### A. Plaintiff Has Not Alleged a Valid Claim Under RESPA

RESPA is a consumer protection statute that, among other things, imposes duties on mortgage loan servicers to respond to certain borrower inquiries regarding the servicing of their loans. *See* 12 U.S.C. § 2605(e). Plaintiff alleges that Defendant violated RESPA by failing to timely and adequately respond to her requests for an itemized accounting of the lender paid expenses added to her Loan balance. (Doc. 1-1 at ¶ 9). Defendant argues that Plaintiff's allegations are insufficient in three respects: 1) Plaintiff does not allege that the Loan is a federally related mortgage loan, 2) Plaintiff does not allege that she submitted a qualified written request, and 3) Plaintiff does not allege actual damages caused by any failure to respond. (Doc. 19-1 at 4–8). Plaintiff responds that the Loan's federally related status is established by an invoice attached to her Petition that denotes the loan type as "FHA", that her alleged requests for an itemized invoice constitute a qualified written request, and that her damages are sufficiently pled in the Petition. (Doc. 21 at 4–5; *see* Doc. 1-1 at

5

18). The Court will take each element in turn.

### 1. Plaintiff has not alleged a federally related mortgage loan

RESPA applies only to "federally related mortgage loan[s]." 12 U.S.C. § 2602(1). The statute defines a "federally related mortgage loan" to include any loan, other than temporary financing, that is secured by a first or subordinate lien on residential real property, and that, among other alternatives, "is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government," or "is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any officer or agency of the Federal Government." 12 U.S.C. § 2602(1)(A)–(B); *see also* 12 C.F.R. § 1024.2(b) (defining "federally related mortgage loan" for purposes of Regulation X). A residential mortgage loan insured by the Federal Housing Administration, an agency within HUD, falls within the statutory definition. *See* 12 U.S.C. § 2602(1)(B)(ii).

Although the United States Court of Appeals for the Fifth Circuit has not yet addressed the issue, district courts within this Circuit, including this Court, have consistently held that a plaintiff who does not specifically allege that the mortgage loan at issue is a "federally related mortgage loan" fails to state a claim under RESPA. *LaBauve v. JP Morgan Chase Bank, N.A.*, No. CV 17-259-SDD-RLB, 2018 WL 1125660 at *3 (M.D. La. Mar. 1, 2018) (holding that a plaintiff may have standing to assert a RESPA claim only if he or she pleads that the mortgage at issue is federally related); *Loraso v. JP Morgan Chase Bank, N.A.*, No. 13-4734, 2013 WL 5755638 at

6

*8 (E.D. La. Oct. 23, 2013); *Middleton v. Ameriquest Mortg. Co.*, No. 1:10CV146-LG-RHW, 2010 WL 2653293 at *4 (S.D. Miss. June 24, 2010); *Washington v. Nationstar Mortgage, LLC,* No. 21-1716, 2022 WL 93617, at *3 (E.D. La. Jan. 10, 2022) (holding, in an action against this same Defendant, that "based on the statutory language of section 2605(e), plaintiff must allege that his mortgage is federally related in order to have standing under RESPA").

Plaintiff's Petition contains no allegation that the Loan is a federally related mortgage loan. (*See* Doc. 1-1). Instead, in her opposition brief, she argues that the Loan is "identified as an FHA loan" in an invoice provided by Defendant, and that an FHA loan necessarily meets the definition of a federally related mortgage loan. (Doc. 21 at 4; *see* Doc. 1-1 at 18).

It is true that, in ruling on the Motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice." *LaBauve*, 2018 WL 1125660, at *2 (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)); *see also Scanian v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a reference to the loan type in an exhibit attached to the pleadings is not a factual allegation by the Plaintiff that her Loan satisfies the statutory definition set forth in 12 U.S.C. § 2602(1). Simply mentioning that the alleged violations were "in connection with a transaction involving a federally related mortgage loan" would be sufficient to satisfy this element, but Plaintiff has not even done that. *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 993-94 (8th Cir. 2002) (finding that referencing

7

alleged violations related to a federally related mortgage loan "is a sufficient allegation of RESPA standing."). While the Court may consider exhibits attached to the pleadings, it will not supply an essential element of a federal statutory claim that the Plaintiff herself has not pleaded. *Cf. Loraso*, 2013 WL 5755638, at *8 (dismissing RESPA claim where complaint did "not specifically allege that the mortgage in question is federally-related" notwithstanding plaintiffs' argument that notice pleading sufficed). Accordingly, Plaintiff has failed to plead an essential element of her RESPA claim.

### 2. Plaintiff has not alleged that she submitted a qualified written request

Section 2605(e) of RESPA obligates a loan servicer to acknowledge receipt of a borrower's qualified written request within five days and to respond substantively, by correcting the account or explaining its position, within thirty days. *See* 12 U.S.C. § 2605(e)(1)(A), (2). That duty is triggered only by a "qualified written request" ("QWR"), which the statute defines as "*written* correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify the name and account of the borrower, and (ii) includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error, or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). A valid QWR must also relate to the *servicing* of the loan. *Matter of Parker*, 655 F. App'x 993, 997-98 (5th Cir. 2016) (per curiam); 12 U.S.C. § 2605(e)(1)(A).

To recover for a loan servicer's failure to respond to a QWR, a plaintiff must show "that their correspondence met the requirements of a QWR, that [the servicer] failed to make a timely response, and that this failure caused them actual damages." *Parker*, 655 F. App'x at 997 (quoting *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x 233, 241 (5th Cir. 2014)). Consistent with these requirements, courts in this District have dismissed RESPA claims where the plaintiff failed to plead facts establishing that the communication at issue constituted qualified written requests under the statute. *Satterfeal v. LoanCare, LLC*, No. 18-1021-JWD-EWD, 2019 WL 2857993, at *3 (M.D. La. July 1, 2019) (dismissing RESPA claim where "plaintiffs ha[d] failed to properly allege that their communications constituted qualified written requests under the statute"); *Clinton v. Saxon Mortg. Servs., Inc.*, No. 12-433-BAJ-SCR, 2013 WL 12239528, at *3 (M.D. La. Mar. 19, 2013) (letter requesting a breakdown of payments and fees was not a QWR where plaintiffs "did not articulate that they disputed any part of their account or why they believed their account may be in error as required by statute."). By contrast, a borrower sufficiently alleges a QWR by identifying specific written correspondence, sent on an identified date, that enabled the servicer to identify the account and stated the basis of the borrower's dispute. *See Williams*, 560 F. App'x at 241–42 (January 28 letter to servicer's foreclosure counsel sufficiently alleged a QWR).

Here, the Petition alleges only that Plaintiff made "numerous attempts to obtain an itemized invoice of lender paid expenses" and that she thereafter received a payoff demand letter dated June 10, 2024. (Doc. 1-1 at ¶ 9). The Petition does not

9

allege that any of these requests were made in writing, when they were made, or what any request specifically entailed. Absent an allegation of a written request, the statutory definition is not satisfied on the face of the pleading. 12 U.S.C. § 2605(e)(1)(B). Additionally, absent any allegation of the timing of the request, the Petition cannot plausibly allege that any response fell outside the statutory response period. *See* 12 U.S.C. § 2605(e)(2).

Plaintiff's opposition does not cure these deficiencies. (*See* Doc. 21). Plaintiff argues that her allegation of numerous requests for an itemized invoice is itself a QWR because such a request would enable the servicer to identify the name and account of the borrower and the reasons for her belief that the account is in error, as required by statute. (Doc. 21 at 5); 12 U.S.C. § 2605(e)(1)(B). However, Plaintiff does not assert, even in argument, that any request was written, and she identifies no date, method, or content of any correspondence. Moreover, the Petition affirmatively alleges that Plaintiff did receive correspondence from Defendant following her requests, the June 10, 2024 payoff demand letter. (Doc. 1-1 at ¶ 9). *Cf. Clinton*, 2013 WL 12239528, at *3 (even where servicer treated borrower correspondence as a QWR, a written response stating the servicer's position and providing a contact for further assistance satisfies the statute). Plaintiff has therefore failed to allege the submission of a qualified written request, and her RESPA claim fails for this independent reason.

### 3. Plaintiff has not alleged actual damages caused by a failure to respond to a QWR

Plaintiff's RESPA claim fails for a third, independent reason: she has not alleged actual damages resulting from the claimed violation. RESPA provides that a

10

servicer who fails to comply with § 2605 is liable to the borrower for "any actual damages to the borrower as a result of the failure," and, in the case of a pattern or practice of noncompliance, additional statutory damages. 12 U.S.C. § 2605(f)(1). "To recover, a claimant must show that actual damages resulted from a RESPA violation." *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 836 (5th Cir. 2014) (per curiam) (citing 12 U.S.C. § 2605(e), (f)); *see also Parker*, 655 F. App'x at 998 (RESPA claim failed where plaintiffs did not show facts "giving rise to a reasonable inference that [they] suffered actual damages from the alleged violation of the RESPA"); *Satterfeal*, 2019 WL 2857993, at *4 ("The mere inference of damage from a § 2605 violation is not sufficient."). RESPA does not define "actual damages"; however, Courts construe the term as synonymous with compensatory damages, requiring facts that plausibly demonstrate injury proximately caused by the alleged violation itself. *Payne v. Seterus, Inc.*, No. 16-0203, 2016 WL 6270761, at *4 (W.D. La. Oct. 26, 2016) (collecting cases). Cognizable actual damages could include, for example, postage incurred in following up on an incomplete response to a QWR, or concrete credit consequences flowing from the failure to respond, but not costs incurred before, or independent of, the alleged violation. *Id.* at *4–5.

In her opposition, Plaintiff contends that Defendant's conduct caused $13,043.47 in damages arising from continued interest and unexplained fees, and that the $17,918.65 she paid to reinstate the Loan and prevent foreclosure constitutes actual damages. (Doc. 21 at 5). While the $17,918.65 reinstatement payment is pleaded (Doc. 1-1 at ¶ 13), the $13,043.47 figure appears nowhere in the Petition.

11

Upon quick calculation, the Court assumes it corresponds to the difference between the October 10, 2024 payoff quote and the original February 5, 2024 quote ($47,069.82 less $34,026.35), each of which is pleaded. (*Id.* at ¶¶ 3, 12). Even crediting both figures as flowing from well-pleaded allegations, as the Court must at this stage, they still do not supply the causal element the statute requires. The Petition references the disputed "lender paid" charges, payments associated with the foreclosure proceeding, and the reinstatement payment. However, it does not plead any fact connecting any of those sums to a *failure to respond to correspondence* as required by § 2605(e). Section 2605(f)(1) compensates "actual damages to the borrower as a result of the failure" to comply; it does not reach every sum a borrower disputes. On the face of the pleading, the causal link between any alleged non-response and the claimed damages is simply absent. *See Whittier*, 594 F. App'x at 836–37 (affirming summary judgment on RESPA claim where borrowers failed to show actual damages resulting from the servicer's response); *Parker*, 655 F. App'x at 998 (complaint must plead facts giving rise to a reasonable inference of actual damages from the alleged violation); *cf. Payne*, 2016 WL 6270761, at *4–5 (damages element satisfied where borrower alleged postage incurred after an insufficient response and credit denials caused by the servicer's failure to respond).

Nor does Plaintiff's invocation of statutory damages salvage the claim. Plaintiff contends that the facts alleged describe a pattern of noncompliance permitting an award of $2,000 in statutory damages under § 2605(f)(1)(B). (Doc. 21 at 5). Additional damages under § 2605(f)(1)(B) presuppose a properly pleaded violation, and an

12

allegation of repeated requests cannot establish a pattern or practice of noncompliance with response obligations that were never triggered by a qualified written request. *Cf. Satterfeal*, 2019 WL 2857993, at *3 (allegation of repeated requests "may reach the threshold for showing a 'pattern or practice of noncompliance,'" but claim failed because plaintiffs did not properly allege that their communications were qualified written requests). Because the Petition alleges no damages attributable to a failure to respond to a QWR, Plaintiff's RESPA claim fails for this reason as well. In sum, Plaintiff's RESPA claim is deficient in three independent respects and these claims are dismissed.

### B. Plaintiff's FDCPA Claim Fails as a Matter of Law

The FDCPA Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), prohibits "debt collectors" from using abusive, deceptive, or unfair practices in the collection of consumer debts. Plaintiff alleges that Defendant violated the FDCPA by continuing to collect the disputed charges, including through foreclosure, without providing verification of the debt after she disputed it. (Doc. 1-1 at ¶ 9). The threshold question, however, is whether Defendant is a "debt collector" subject to the Act at all.

The FDCPA applies only to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In *Henson v. Santander Consumer USA Inc.*, 582 U.S.

13

79 (2017), the United States Supreme Court explained that "by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Id.* at 83. "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Id.* The Act also expressly excludes from the definition of "debt collector" any person collecting a debt to the extent such activity "is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F).

Plaintiff does not dispute that Defendant's foreclosure action sought to collect a debt owed directly to Defendant. Instead, she argues that dismissal is premature because the Cyprexx invoice attached as Exhibit F to her Petition reflects $5,071.24 in labor performed by a third party, such that Defendant's inclusion of that amount in its payoff quotes "amounts to being the recovery of a debt on behalf of a third party." (Doc. 21 at 5– 6).

Plaintiff's own pleading forecloses this argument. The Petition repeatedly characterizes the disputed sums as "lender paid" charges or expenses; that is, amounts Defendant paid to Cyprexx and then added to the balance owed by Plaintiff to Defendant. (Doc. 1-1 at ¶¶ 6, 9, 10). The invoice itself is directed from Cyprexx to Defendant. (Doc. 1-1 at 17). Nothing in the Petition or its exhibits alleges that Defendant ever demanded payment from Plaintiff on Cyprexx's behalf, or that Cyprexx retained any interest in the amounts at issue. On the face of the pleadings, Defendant sought to collect a debt owed to itself, including sums it had advanced. Under *Henson*, such an entity is not a "debt collector" subject to the FDCPA. 582 U.S.

14

at 81-83. Thus, Plaintiff has not sufficiently alleged that Defendant is a debt collector subject to regulation under the FDCPA and Plaintiff's FDCPA claim fails preliminarily for this reason.

### C. Plaintiff's Claims Premised on HUD Regulations and Guidelines

HUD promulgates regulations and servicing guidelines governing loans insured by the Federal Housing Administration, including limits on property preservation and inspection costs a servicer may charge to a borrower's account. U.S. DEP'T HOUS. & URBAN DEV., FED. HOUS. ADMIN., SINGLE FAMILY HOUSING POLICY HANDBOOK 4000.1 (2025). Plaintiff alleges that Defendant violated those guidelines by charging costs for tree and debris removal exceeding permissible amounts, and on that basis seeks damages, costs, fees, and punitive damages. (Doc. 1-1 at ¶¶ 10, 14). It is well settled in this Circuit that there is not a private right of action for violations of HUD regulations or guidelines. *Roberts v. Cameron-Brown Co.* 556 F.2d 356, 360-62 (5th Cir. 1997).

In her opposition, Plaintiff concedes as much, but recasts her allegations to contend that she "does not assert a private right of action based on violation of HUD regulations," and that the alleged violations are instead "indicative of the invalidity of the invoice and [Defendant] acting in bad faith." (Doc. 21 at 6). The words "bad faith" appear nowhere in the Petition, and Plaintiff identifies no legal basis for a freestanding "bad faith" claim. To the extent the Petition asserts a claim for relief predicated on violations of HUD regulations or guidelines, it is dismissed with prejudice.

15

### D. Attorney's Fees

Plaintiff's demand for attorney's fees is not an independent cause of action. Under Louisiana law, attorney's fees are not recoverable absent authorization by statute or contract. *Frank L. Beier Radio, Inc. V. Black Gold Marine, Inc.*, 499 So. 2d 1014, 1015 (La. 1984). Plaintiff acknowledges that her fee demand rests entirely on RESPA and the FDCPA. (Doc. 21 at 6); *see* 12 U.S.C. § 2605(f)(3). Because these claims are dismissed with prejudice, any fee demand premised on these statutes is likewise dismissed.

### E. Leave to Amend

In the conclusion of her opposition, Plaintiff requests, in the alternative, that the Court grant leave to amend her complaint. (Doc. 21 at 6). Defendant argues leave should be denied because the deadline for amended pleadings and exchange of discovery have both expired, such that amendment at this late date would unduly prejudice Defendant, and because Plaintiff's request for leave to amend, raised in a single sentence in the conclusion of her opposition without any indication of how the deficiencies would be corrected, is procedurally improper. (Doc. 22 at 9); *see Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590-91 (5th Cir. 2016). The Court agrees.

First, Plaintiff's request is insufficient under the standards set for this Circuit. "A movant is required to give the court some notice of the nature of his or her proposed amendments." *Thomas*, 832 F.3d at 590 (quoting *United States ex rel. Doe v. Dow Chem. Co.,* 343 F.3d 325, 330–31 (5th Cir. 2003)). Even absent a formal motion, the requesting party must "set forth with particularity the grounds for the amendment

16

and the relief sought." *Id.* While the Fifth Circuit has "not provided strict guidance as to what constitutes a sufficient request for leave to amend, it is clear that some specificity is required." *Id.* at 590–91 (quoting *Doe*, 343 F.3d at 331). A "one-page, three-sentence motion" that "offers no grounds on which an amendment should be permitted" is insufficient. *Id.* Here, Plaintiff's single-sentence request for leave to amend identifies no proposed amendment and no explanation of how any deficiency would be corrected. It "offers no grounds" upon which this Court could permit leave.

Second, the request is untimely, and Plaintiff has not shown good cause to modify the Court's scheduling order. Plaintiff's request for leave, embedded in her opposition to a motion to dismiss, was filed January 3, 2026. (*See* Doc. 22 at 9). The deadline to join other parties or to amend the pleadings expired on May 8, 2025, and fact discovery closed on November 15, 2025. (Doc. 12 at ¶¶ 1,2(b)). Indeed, the Court's Scheduling Order expressly provides that "[a]mendments sought after this deadline may be permitted in accordance with the good cause standard of Rule 16 of the Federal Rules of Civil Procedure," and that "[a]ny proposed amended pleading shall be comprehensive." (Doc. 12 at p. 1 n. 1). The Fifth Circuit has likewise made "clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. SouthTrust Bank of Ata., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). In assessing good cause, the Court considers "'(1) the explanation for the failure to [timely move for leave to amend]; (2)

the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'" *Id.* (quoting *Reliance Ins. Co.* v. *La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

Plaintiff offers no explanation for her failure to timely seek amendment. In *S&W Enterprises*, the Fifth Circuit affirmed the denial of leave where the movant's proffered explanation was "tantamount to no explanation at all." 315 F.3d at 536. Nor does her litigation posture supply one. Plaintiff devoted her opposition to insisting that her Petition is sufficient as pleaded, seeking amendment only as a fallback in reaction to Defendant's Motion. *See Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) (affirming the denial of leave where the plaintiff maintained his pleadings were sufficient, "failed to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies in his pleadings," and tendered no proposed amended complaint). The remaining factors do not rescue the request. The exchange of discovery has closed, so amendment would require reopening discovery on a new pleading, prejudicing Defendant and further delaying resolution of a case already past its pretrial deadlines. The Court acknowledges that while some district courts confronting insufficiently pled federally-related-mortgage allegations have permitted amendment, *see LaBauve*, 2018 WL 1125660, at *3; *Loraso*, 2013 WL 5755638, at *8; *Middleton*, 2010 WL 2653293, at *4, none of those decisions confronted a request made after the expiration of a scheduling order's amendment deadline. Each instead applied Rule 15's liberal standard, not Rule

18

16(b)(4)'s higher burden, and none involved a wholly unexplained delay measured against a closed discovery record.

Lastly, as to Plaintiff's FDCPA claim and her claims premised on HUD regulations and guidelines, amendment would in any event be futile. The defects in those claims are legal, not factual. Plaintiff alleges that Defendant collected a debt owed to itself and is therefore not a "debt collector" under *Henson* (582 U.S. at 83), and no private right of action exists for violations of HUD guidelines. Thus, Plaintiff's request for leave to amend is denied.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Rule 12(c) Motion to Dismiss (Doc. 19) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 30th day of July, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

19